

CERTIFIED COPY
A True Copy
Teste:

Deputy Clerk
of the United States
Court of Appeals for the
Seventh Circuit

In the

# United States Court of Appeals

## For the Seventh Circuit

No. 15-1567

MANUEL PANTOJA,

*Plaintiff-Appellee*,

*v.*

PORTFOLIO RECOVERY ASSOCIATES, LLC,

*Defendant-Appellant*.

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 1:13-cv-07667 — **Robert W. Gettleman**, *Judge*.

ARGUED DECEMBER 11, 2015 — DECIDED MARCH 29, 2017

Before KANNE, ROVNER, and HAMILTON, *Circuit Judges*.

HAMILTON, *Circuit Judge*. Back in 1993, according to defendant Portfolio Recovery Associates, plaintiff Manuel Pantoja incurred a debt for a Capital One credit card that he applied for but never actually used. Twenty years later, long after the statute of limitations had run, Portfolio Recovery had bought Capital One's rights to this old debt and sent Pantoja a dunning letter trying to collect. The federal Fair Debt Col-

lection Practices Act ("FDCPA") prohibits collectors of consumer debts from, among other things, using "any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. This appeal concerns the practice of attempting to collect an old consumer debt that is clearly unenforceable under the applicable statute of limitations.

The district court granted summary judgment in favor of plaintiff Pantoja on his claim under § 1692e. The court found the dunning letter was deceptive or misleading because (a) it did not tell the consumer that the defendant could not sue on this time-barred debt and (b) it did not tell the consumer that if he made, or even just agreed to make, a partial payment on the debt, he could restart the clock on the long-expired statute of limitations, in effect bringing a long-dead debt back to life. *Pantoja v. Portfolio Recovery Assocs., LLC*, 78 F. Supp. 3d 743 (N.D. Ill. 2015). We affirm, essentially for the reasons explained concisely by Judge Gettleman.

I. *Factual and Procedural Background*

We review *de novo* a grant of summary judgment, considering facts that are not disputed and giving the non-moving party the benefit of conflicts in the evidence and reasonable inferences that might be drawn from the evidence. *Ruth v. Triumph P'ships*, 577 F.3d 790, 794 (7th Cir. 2009), quoting *Belcher v. Norton*, 497 F.3d 742, 747 (7th Cir. 2007). In 1993, plaintiff Manuel Pantoja applied for a credit card from Capital One Bank. He was approved for the credit card, but he never activated the account or used the card for any purpose. Nevertheless, Capital One assessed annual fees, late fees, and activation fees against Pantoja's account. Not surprisingly, he never

made any payment on the account. Defendant Portfolio Recovery Associates purchased a portfolio of consumer debts including the debt allegedly owed by Pantoja. In 1998, Portfolio Recovery attempted to collect the alleged debt by telephone calls but apparently stopped in fairly short order without success. Nothing more happened with the account until April 2013, when Portfolio Recovery sent a dunning letter to Pantoja claiming he owed $1,903.15. The letter said:

> **We are offering to settle this account FOR GOOD!** Life happens and at times you may fall behind on your commitments. We understand and are offering you the opportunity to lock in this settlement offer with a low down payment of $60.00. If settling this account with the options that we are offering is difficult for you, give us a call.
>
> ***Other payment options may be available so please call 1-800-772-1413 for more information.***
>
> Please understand, we can't help you resolve this debt if you don't call, our friendly representatives are waiting. Because of the age of your debt, we will not sue you for it and we will not report it to any credit reporting agency.

The letter also proposed three "settlement offers" to choose among. The first called for a "down payment" of $60.00 and payment of an additional $511.00 within a month, with the claim that this would "save" Pantoja $1,332.15. The second option called for a down payment of $45.00 and six monthly payments of $104.00 each, to "save" Pantoja $1,234.15. The

third option called for a down payment of $40.00 and twelve monthly payments of $60.00, to "save" Pantoja $1,143.15. The offers added: "Once the full settlement payment is received your account will be considered settled in full." The second page of the letter cautioned: "We are not obligated to renew this offer." See *Evory v. RJM Acquisitions Funding L.L.C.*, 505 F.3d 769, 776 (7th Cir. 2007) (stating that this sentence, word-for-word, would protect consumers from false impressions concerning collectors' supposedly "one-time" settlement offers).

Our principal focus is on the following language in the dunning letter: "Because of the age of your debt, we will not sue you for it and we will not report it to any credit reporting agency." The parties filed cross-motions for summary judgment. Portfolio Recovery pointed out that the dunning letter said the debt was so old that it would not sue the debtor, and it argued that the letter was at worst ambiguous as to whether it could have sued to collect the debt.

As noted, the district court granted summary judgment for Pantoja on his claim under the FDCPA. The court offered two independent reasons, and we agree with both. The first is that the dunning letter failed to warn Pantoja that if he accepted any of the settlement offers, whether by making a partial payment or even by just agreeing to make a payment, he would lose the protection of the statute of limitations. The second is that the letter deceptively said that Portfolio Recovery had chosen not to sue Pantoja, rather than saying that the debt was so old that Portfolio Recovery could not sue him for the alleged debt. The court entered a final judgment in favor of

Pantoja for statutory damages of $1,000 but deferred until after this appeal any action on Pantoja's claim for attorney fees under 15 U.S.C. § 1692k(a)(3).[1]

II. *Analysis*

The purposes of the FDCPA are "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e). To accomplish those purposes, the Act provides in sweeping terms: "A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. The question is how that language applies to the dunning letter here, which attempted to collect a debt barred by the applicable statute of limitations.

We start with law that we believe is settled. First, a debt collector violates the Act by suing to collect a consumer debt after the statute of limitations has run and bars the suit. *Phillips v. Asset Acceptance, LLC*, 736 F.3d 1076, 1079 (7th Cir. 2013), collecting cases, including *Kimber v. Federal Financial Corp.*, 668 F. Supp. 1480, 1488 (M.D. Ala. 1987); *Huertas v. Galaxy Asset Mgmt.*, 641 F.3d 28, 32–33 (3d Cir. 2011); *Harvey v. Great Seneca Fin. Corp.*, 453 F.3d 324, 332–33 (6th Cir. 2006).

Second, a debt collector also violates the Act by threatening to sue to collect such a debt. See 15 U.S.C. § 1692e(5) (outlawing a "threat to take any action that cannot legally be taken

---

[1] The court also granted summary judgment to Portfolio Recovery on a state-law claim that is no longer at issue in the case. *Pantoja*, 78 F. Supp. 3d at 747.

or that is not intended to be taken"); *McMahon v. LVNV Funding, LLC,* 744 F.3d 1010, 1021 (7th Cir. 2014) ("The plain language of the FDCPA prohibits … threatening to take actions that the collector cannot take.*")*; *Huertas*, 641 F.3d at 33 (plaintiff's FDCPA claim regarding attempt to collect a time-barred debt "hinges on whether [the dunning] letter threatened litigation"); *Freyermuth v. Credit Bureau Services, Inc*., 248 F.3d 767, 771 (8th Cir. 2001) ("[I]n the absence of a threat of litigation or actual litigation, no violation of the FDCPA has occurred when a debt collector attempts to collect on a potentially time-barred debt that is otherwise valid."); *Parkis v. Arrow Financial*, 2008 WL 94798, at *7 (N.D. Ill. Jan. 8, 2008); *Walker v. Cash Flow Consultants, Inc*., 200 F.R.D. 613, 616 (N.D. Ill. 2001); *Beattie v. D.M. Collections, Inc*., 754 F. Supp. 383, 393 (D. Del. 1991).

The point of controversy here concerns efforts to collect consumer debts on which the statute of limitations has expired when the effort does *not* involve filing or threatening a lawsuit. Compare *McMahon*, 744 F.3d at 1020 (dunning letters offering to "settle" time-barred debts could violate Act by leading debtors to believe the debts were legally enforceable); *Daugherty v. Convergent Outsourcing, Inc*., 836 F.3d 507, 509 (5th Cir. 2016) (effort to collect is not automatically unlawful, but letter violates FDCPA if it could lead unsophisticated consumer to believe her time-barred debt is legally enforceable); and *Buchanan v. Northland Group, Inc*., 776 F.3d 393, 397 (6th Cir. 2015) (reversing dismissal on pleadings; offer to settle time-barred debt could violate Act by failing to disclose that suit would be time-barred or that partial payment would remove statute of limitations bar), with *Huertas*, 641 F.3d at 33

(holding that attempt to collect a time-barred debt was permissible if litigation not threatened), and *Freyermuth*, 248 F.3d at 771 (same).

Even without an express threat of litigation, such collection efforts offer opportunities for mischief and deception, as we explain below. We recognize that most states (though not Wisconsin, in this circuit) treat a debt as a debt even after the statute of limitations has run so that it cannot be legally enforced, at least if the defendant appears and asserts the affirmative defense. See, e.g., *Buchanan*, 776 F.3d at 396–97 (recognizing general rule); cf. Wis. Stat. § 893.05 (when statute of limitations expires, "the right is extinguished as well as the remedy"). The creditor retains the legal right to appeal to the debtor to honor the debt out of a sense of moral obligation even if the legal obligation can no longer be enforced in court. Nevertheless, the opportunities for mischief and deception, particularly when sophisticated parties aim carefully crafted messages at unsophisticated consumers, may well be so great that the better approach is simply to find that any such efforts violate the FDCPA's prohibitions on deceptive or misleading means to collect debts, § 1692e, and on "unfair or unconscionable means" to attempt to collect debts, § 1692f.

The plaintiff does not argue for that broad rule here, however, and we can decide this case on narrower grounds. We agree with the district court's two reasons for finding that the dunning letter here was deceptive. First, the letter does not even hint, let alone make clear to the recipient, that if he makes a partial payment or even just a promise to make a partial payment, he risks loss of the otherwise ironclad protection of the statute of limitations. Second, the letter did not make clear to the recipient that the law prohibits the collector from

suing to collect this old debt. Either is sufficient reason to affirm summary judgment for the plaintiff.

   A.  *The Danger of Resetting the Statute of Limitations*

We begin with the danger that a debtor who accepts the offered terms of settlement will, by doing so, waive his otherwise absolute defense under the statute of limitations. Only the rarest consumer-debtor will recognize this danger. See, e.g., *Buchanan*, 776 F.3d at 399; *McMahon*, 744 F.3d at 1021; *Pantoja*, 78 F. Supp. 3d at 746; Debt Collection, 78 Fed. Reg. 67,848, 67,876 (Nov. 12, 2013) (advance notice of proposed rulemaking by Consumer Financial Protection Bureau).

This danger is present under Illinois law, which governs the underlying debt here. The statute of limitations for written contracts and debts is ten years. The statute provides further: "if any payment or new promise to pay has been made, in writing … within or after the period of 10 years, then an action may be commenced thereon at any time within 10 years after the time of such payment or promise to pay." 735 ILCS 5/13-206. That is, a new payment or written promise to pay starts a new ten-year clock.

The applicable statute of limitations could also be the five-year limit of 735 ILCS 5/13-205, which seems to apply if the plaintiff-debt collector does not have written proof of the debt. See *Herkert v. MRC Receivables Corp.*, 655 F. Supp. 2d 870, 878 (N.D. Ill. 2009), citing *Parkis*, 2008 WL 94798, at *5; *Ramirez v. Palisades Collection, LLC*, 2008 WL 2512679, at *3–*4 (N.D. Ill. 2008).[2] Illinois courts hold that a new promise to pay will also

---

[2] We would expect a debt collector to know whether it has written proof of the debt, and thus which statute would apply, before it attempts to collect the debt.

start a new five-year clock under this statute. See, e.g., *Abdill v. Abdill*, 126 N.E. 543, 544 (Ill. 1920); *Schmidt v. Desser*, 401 N.E.2d 1299 (Ill. App. 1980) (requiring unambiguous written promise to restart clock); *Ross v. St. Clair Foundry Corp.* 271 Ill. App. 271, 273 (1933).

On this point, case law allows some room for disagreement about the precise scope of Illinois law, such as which statute applies, whether the new promise to pay must be explicit or may be implied, and whether the new promise to pay must be in writing. Portfolio Recovery also points out that the most relevant precedents are relatively old. None of those points save this letter from being deceptive.

Whatever the precise scope of the Illinois law on restarting the statute of limitations clock with a partial payment or new promise to pay, either step would have put Pantoja in a much worse legal position than he would have been in before taking the step. Before he received defendant's letter, he had an absolute defense to any possible collection suit, which would have been illegal to file. If he had made or promised to make a partial payment, he could have been sued, likely as a pro se defendant, in a new suit. In such a suit, at best, he would have had to challenge the collector's reliance on these Illinois statutes and case law that would have given the collector substantial support. Silence about that significant risk of losing the protection of the statute of limitations renders Portfolio Recovery's dunning letter misleading and deceptive as a matter of law.

To avoid this result, Portfolio Recovery points to the opening language in its letter: "We are offering to settle this account FOR GOOD!", and the language close to the settlement

offers: "Once the full settlement payment is received your account will be considered settled in full." Portfolio Recovery argues that these assurances show there was no danger of deception here because an unsophisticated consumer would have understood that his debt would have been extinguished if he had accepted its offer.

That argument misses the point. We assume that if the debtor actually accepted the offer and made all payments required for the settlement, without missing one or being late once, the defendant could not have tried to revive the underlying debt for the full amount. But that's not the relevant danger. The point is that an unsophisticated consumer debtor who makes the first payment or who promises to make a partial payment is much worse off than he would have been without taking either step. If he then fails or refuses to pay further, he will face a potential lawsuit. For purposes of this appeal, it does not matter whether a failure to make further payments would revive the original amount of the debt or just the smaller amount of the settlement offer. Either way, the debtor will be much worse off.

We assume that a few consumer debtors, even if they know the debt can never be collected in a lawsuit, might choose to pay an asserted debt based on a sense of moral obligation. But we believe the FDCPA prohibits a debt collector from luring debtors away from the shelter of the statute of limitations without providing an unambiguous warning that an unsophisticated consumer would understand. We will not attempt to prescribe exact language for debt collectors to use when writing such letters, but the language would need to be clear, accessible, and unambiguous to the unsophisticated consumer. Summary judgment for plaintiff was appropriate

here because this letter provided no indication of the relevant danger.

B. *We Choose Not to Sue You, or We Cannot Sue You?*

The second reason we agree with the district court that Portfolio Recovery's letter is deceptive and misleading is that it gives the impression that Portfolio Recovery has only chosen not to sue, not that it is legally barred from doing so. Defendant points out, though, that its letter to Pantoja does not threaten a lawsuit, and it even says that Portfolio Recovery "will not sue you for it."

As the district noted, this carefully worded sentence was taken from a 2012 consent decree between the Federal Trade Commission and another debt collector. Where that other collector knew the statute of limitations had expired, the decree required collection letters to say: "The law limits how long you can be sued on a debt. Because of the age of your debt, we will not sue you for it." *McMahon v. LVNV Funding, LLC*, 2012 WL 2597933, at *2 (N.D. Ill. July 5, 2012), *rev'd on other grounds*, 744 F.3d 1010 (7th Cir. 2014); see also 78 Fed. Reg. at 67,876 n.240 (quoting consent decree). As the district court also noted, Portfolio Recovery omitted the first sentence from the consent decree about the law limiting how long you can be sued for a debt. It opted instead to include only the vaguer "Because of the age of your debt we will not sue you for it …." The reader is left to wonder whether Portfolio has chosen to go easy on this old debt out of the goodness of its heart, or perhaps because it might be difficult to prove the debt, or perhaps for some other reason.

The district court wrote: "Upon receipt of the letter the only reasonable conclusion that an unsophisticated consumer

(or any consumer) could reach is that defendant was seeking to collect on a legally enforceable debt, even if defendant indicated that it chose not to sue." 78 F. Supp. 3d at 746. Portfolio Recovery argues that its letter's language is ambiguous, so that summary judgment was improper and so that the plaintiff should have been required to come forward with a consumer survey or some other convincing evidence that consumers would actually understand the language as the district court did.

When handling FDCPA cases, we use the legal concept of the unsophisticated consumer to gauge the actions of debt collectors. The unsophisticated consumer is "uninformed, naïve, and trusting, but possesses rudimentary knowledge about the financial world, is wise enough to read collection notices with added care, possesses 'reasonable intelligence,' and is capable of making basic logical deductions and inferences." *Williams v. OSI Educ. Servs., Inc.*, 505 F.3d 675, 678 (7th Cir. 2007) (internal quotations and alterations removed). Applying this standard, the issue is whether the dunning letter "could well confuse a substantial number of recipients." *Id.*, quoting *Taylor v. Cavalry Inv., LLC*, 365 F.3d 572, 575 (7th Cir. 2004).

When assessing whether a dunning letter violates the FDCPA, whether an unsophisticated consumer would find certain debt-collection language misleading is often a question of fact. *Lox v. CDA, Ltd.*, 689 F.3d 818, 822 (7th Cir. 2012), citing *Walker v. Nat'l Recovery, Inc.*, 200 F.3d 500, 503 (7th Cir. 1999); *Evory*, 505 F.3d at 776. We have further explained:

> As an outgrowth of this practice, we have determined that there are three categories of § 1692e cases. The first category includes cases in which the allegedly offensive language is plainly and

> clearly not misleading. In cases of this nature, no extrinsic evidence is needed to show that the reasonable unsophisticated consumer would not be confused by the pertinent language. The second category of cases includes debt collection language that is not misleading or confusing on its face, but has the potential to be misleading to the unsophisticated consumer. If a case falls into this category, we have held that plaintiffs may prevail only by producing extrinsic evidence, such as consumer surveys, to prove that unsophisticated consumers do in fact find the challenged statements misleading or deceptive. The final category includes cases involving letters that are plainly deceptive or misleading, and therefore do not require any extrinsic evidence in order for the plaintiff to be successful.

*Lox*, 689 F.3d at 822, quoting *Ruth*, 577 F.3d at 800 (internal citations omitted). Where the FDCPA requires clarity, however, ambiguity itself can prove a violation. E.g., *Janetos v. Fulton Friedman & Gullace, LLP*, 825 F.3d 317, 323 (7th Cir. 2016), citing *Chuway v. National Action Fin. Servs., Inc.*, 362 F.3d 944, 947–48 (7th Cir. 2004).

We are not sure that the only reasonable way to read defendant's letter is the district court's reading, that the letter would confuse all unsophisticated consumers, but we are confident that it is one reasonable way to read it. Closer to the heart of the issue, this letter is an example of careful and deliberate ambiguity. (Recall how it adopts part of the language

from another debt collector's consent decree.) The very ambiguity that Portfolio Recovery claims should save it from summary judgment convinces us that summary judgment was appropriate. The carefully crafted language, chosen to obscure from the debtor that the law prohibits the collector from suing to collect this debt or even from threatening to do so, is the sort of misleading tactic the FDCPA prohibits. The only reason to use such carefully ambiguous language is the expectation that at least some unsophisticated debtors will misunderstand and will choose to pay on the ancient, time-barred debts because they fear the consequences of not doing so.

The judgment of the district court is AFFIRMED.